UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON

       Plaintiff,

v.

107 TASTE BRICKELL LLC.,
d/b/a 107 Taste

       Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff James Watson ("Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, 107 Taste Brickell, LLC. ("Defendant") doing business as 107 Taste, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

    1.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

    2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

    3.    Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies of a protected class under the ADA, 42 U.S.C. §§ 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially

limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4. Plaintiff uses the internet and a mobile device to help him navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide him a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors mobile websites to ensure and determine whether places of public accommodation and/or their mobile websites are in compliance with the ADA.

6. Defendant, 107 Taste Brickell, LLC., is a Florida Limited Liability Company which owns and operates a place of public accommodation, a restaurant branded as "107 Taste" with multiples locations, all open to the public, including Defendant's restaurant located at 1190 SW 2nd Ave, Miami, 33130. As such, it is a Place of Public Accommodation subject to the requirements of Title III of the ADA and it's implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). Defendant's 107 Taste Brickell, LLC., restaurant is also referenced herein as "place of public accommodation," "107 Taste" or "Restaurant."

7. Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

8. Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, and/or became a beneficiary of the https://107taste.com (hereinafter "mobile website") which is designed for the general public to access on their mobile devices (phones, tablets). This mobile website supports, is an extension of, is in conjunction with, is complementary and supplemental to Defendant, "107 Taste". The mobile website delineates the goods, services, accommodations, privileges, benefits and facilities available to patrons at "107 Taste" restaurants.

9. The mobile website is offered as a way for the public to become familiar with 107 Taste's menu selections, hours of operation, restaurant locations, specials, and other information Defendant seeks to communicate to the public. Through the mobile website the public can place an order for pick-up at the restaurant or schedule for delivery and subscribe for the "107 Taste" newsletter to receive special offers, and special customized coupons for customers on their Birthday. The mobile website also allows the public to contact the restaurant with any questions or specific inquires. By the provision of menu selection, the ability to place an order to-go, and the ability to contact the restaurant online, the mobile website is an integral part of the goods and services offered by Defendant at its "107 Taste" restaurants. By this nexus, the mobile website is characterized as a Place of Public Accommodation to Title III of the ADA[1], 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104(2).

---

[1] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice. The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/. The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible

10. The mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from their mobile device. As such, the mobile website is subject to the ADA because it is offered as a tool to promote, advertise and sell products and services from Defendant's restaurant, which is a place of public accommodation. As a result, the mobile website must interact with the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public[2].

11. The mobile website does not properly interact with the VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals.

12. Like the seeing community, Plaintiff would like the opportunity to be able to use the https://107taste.com mobile website to test whether he can comprehend the "107 Taste" restaurant menu selections, or test for the ability to order food. However, unless Defendant is required to eliminate the barriers to Plaintiff's ability to communicate with Defendant through the mobile website, Plaintiff will continue to deny full and equal access to the mobile website and will be deterred from fully using that mobile website.

---

websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

[2] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

13. Plaintiff is continuously aware of the violations on the mobile website and is aware that it would be a futile gesture to attempt to utilize that mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

14. Defendant and alike restaurants are fully aware of the need to provide full access to all visitors to the mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

15. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is his only means to secure adequate redress from Defendant's discriminatory practice.

16. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

17. Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205 and 28 CFR 36.505.

**COUNT I – VIOLATIONS OF TITLE III OF THE ADA**

18. The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the provision of auxiliary aids and services for such purpose.

19. According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

20. 28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

21. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

22. The "107 Taste" mobile website has been designed to integrate with 107 Taste's restaurants through the provision of to-go order, and the ability to contact the restaurant with any inquires online. Defendant has extended its "107 Taste" restaurants into individual persons' homes and portable devices wherever located through a mobile website which is a service, facility, privilege, advantage, benefit and accommodation of its restaurant. Because the mobile website is integrated with, and is a nexus to, Defendants' brick-and-mortar restaurants, it is governed by the following provisions:

    a. U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b.  42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

    c.  42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

    d.  42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

    e.  42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

   f. 42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

   g. 42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

   h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

  23. Plaintiff attempted to access and/or utilize the https://107taste.com mobile website, but was unable to, and he continues to be unable to enjoy full and equal access to the mobile website and/or understand the content therein because numerous portions of the mobile website do not interface with VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

  i. Guideline 1.3.2 – Meaningful Sequence is violated. Each menu is not accessible due to a nonsequential focus order. For example, the 'Gyoza' dish is listed for $8.50; however,

   it's announced as Gyoza, then unlabeled graphic, then $6.50 and then $6.95. This happened in each menu tested, focus skips randomly so the incorrect prices are announced. On some pages, no price is announced at all. Note - an accessibility widget is present and was active for all testing.

 ii. Guideline 2.1.1 – Keyboard is violated. A map is displayed on the 'Location' page pin for each address. The pins are not in the tab order, as required nor are they labeled. Each is announced as only "button." If a user does select one of the unlabeled pins, then a slide-out is displayed with the information, but this isn't announced nor does focus move to it. An accessible alternative, such as plain text isn't available on this page.

 iii. Guideline 2.4.3 – Focus Order violated. The homepage popup allows users to sign up for offers, but the popup isn't announced. Although the popup remained open while we were on the homepage, it wasn't announced, and focus didn't move to it.

 iv. Guideline 4.1.2 – Name, Role, Value. Multiple unlabeled buttons are present on the online ordering pages. For example, the Account profile icon is announced as "d button" while the Cart button is announced as "c button." The first sort button is then announced as "a button" and finally the second sort button is announced as just "button" and four unlabeled buttons are announced consecutively.

 v. Guideline 4.1.3 – Status Messages is violated. After a dish is added to the cart, then the total price is shown at the top of the page and the cart icon button updates to show the total quantity of items in the cart, but none of these are announced. A confirmation message is not announced to inform SRUs that a product has been added to their online order.

  24. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to the third-party vendor's reservation platform does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); See *Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4

(C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

25. As a beneficiary of the mobile website which serves as a gateway to Defendant's restaurant, Defendant is required to comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a mobile website that is accessible Plaintiff feeling excluded and rejected because he is disabled. As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within the mobile website. By continuing to operate and/or be the beneficiary of a mobile website with discriminatory conditions, Defendant has contributed (and continues to contribute) to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions within the mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless he is willing to endure additional discrimination, Plaintiff is (and has been) deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining and/or benefiting from a mobile website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

26. Defendant has violated the ADA by failing to interface the mobile website which is directly linked to its restaurant with VoiceOver screen reader software utilized by Plaintiff (a visually impaired individual) (reference violations delineated within paragraph 24) either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff accommodation on the basis of his disability:

  a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

  b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

  c. in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

  d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

  e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

  f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

  g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can

demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

   h. by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

  27. Plaintiff is continuously aware of the violations within the mobile website https://107taste.com and is aware that it would be a futile gesture to attempt to utilize the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

  28. Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because he is disabled. As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within the mobile website. By continuing to operate and/or be the beneficiary of a mobile website with discriminatory conditions, Defendant has contributed (and continues to contribute) to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions within the mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless he is willing to endure additional discrimination, Plaintiff is (and has been) deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is

deterred and discouraged from doing so. By maintaining and/or benefiting from a mobile website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

29. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA and conform the https://107taste.com mobile website to WCAG 2.1 Level A and AA Guidelines.

30. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to the mobile website. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA when he visits the website to test for compliance with the ADA. Plaintiff desires to access the mobile website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this mobile website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

31. Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

32. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter the mobile website so that it is readily accessible to and usable by Plaintiff and other persons with vision impairments.

WHEREFORE, Plaintiff, James Watson hereby demands judgment against Defendant, 107 Taste Brickell, LLC., d/b/a 107 Taste and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that the mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain the mobile website which serves as a gateway to its restaurant to ensure that it is readily accessible to and usable by Plaintiff, a visually impaired person;

c. The Court issue an Order directing Defendant to alter the mobile website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d. The Court issue an Order directing Defendant provide the appropriate auxiliary aids such that Plaintiff (a visually impaired person) will be able to effectively communicate with the mobile website for purposes of comprehending "107 Taste" menu selections, and place an order online for delivery or to-go, and during that time period prior to the mobile website's being designed to permit Plaintiff to effectively communicate, requiring Defendant to provide an alternative method for Plaintiff to effectively communicate so that he is not impeded from obtaining the goods and services which Defendant has made available to the public through the mobile website.

e.     The Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f.     The Court enter an Order directing Defendant to continually update and maintain the mobile website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.     The Court award attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h.     The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this March 7, 2023.

> By: */s/ J. Courtney Cunningham*
> J. Courtney Cunningham, Esq.
> FBN: 628166
> J. COURTNEY CUNNINGHAM, PLLC
> 8950 SW 74th Court, Suite 2201
> Miami, Florida 33156
> Telephone: 305-351-2014
> cc@cunninghampllc.com
> legal@cunninghampllc.com
>
> *Counsel for Plaintiff*